

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 10, 2017

**BY ECF AND HAND**

Honorable Deborah A. Batts
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States</u> v. <u>Andre Marie Ngono</u>, 16 Cr. 367 (DAB)

Dear Judge Batts:

      The Government respectfully submits this letter in advance of the defendant's sentencing, which is scheduled for September 19, 2017 at 11:00 a.m.  For the reasons set forth below, a Guidelines Sentence of 24 to 30 months' imprisonment on Counts One through Five, together with a mandatory consecutive term of 24 months' imprisonment on Count Six is sufficient, but not greater than necessary, to achieve the goals of sentencing with respect to the defendant, who stole a victim's identity and, over a six-year period, used that identity to obtain fraudulently federal student financial aid, unemployment benefits, and immigration benefits.

<u>**Overview of Offense Conduct**</u>

      The Court is familiar with the facts of this case from the April 2017 trial of the defendant, Andre Marie Ngono.  Beginning in or about April 2007, the defendant stole the identity of a victim (the "Victim"), and used it to obtain employment as a security guard.  (Presentence Investigation Report ("PSR") ¶ 13.)  From approximately 2009 through 2015, the defendant used the Victim's identity to obtain $17,755.44 in Medicaid benefits, $1,835 in Supplemental Nutrition Assistance Program payments, and $6,267.79 in Public Assistance benefits.  (*See* PSR ¶¶ 15, 18; Exhibit A, attached hereto.)

      In addition to receiving state benefits, the defendant used the Victim's identity to file for and to receive unemployment insurance payments beginning in February 2011.  The defendant received a total of $9,191, $3,939 of which was federal funds.  (PSR ¶ 16.)  In April 2011, the defendant, again using the Victim's identity, applied to become a student at the City University of New York.  In connection with his application, and over the course of the next five years, the defendant applied for and received approximately $84,256 in federal financial student aid, to which he was not entitled.  (PSR ¶ 17.)

      Lastly, in June 2015, the defendant used the Victim's identity to apply for and receive

immigration benefits under the Deferred Action for Childhood Arrivals ("DACA"). Specifically, the defendant altered his passport by changing his name to the name of the Victim; his date of birth and date of entry so that he would qualify under the program; and the passport number. (PSR ¶ 19.) With the approval of the DACA application, the defendant received an employment authorization card, which allowed him to work. (*Id.*)

## Offense Conduct

At trial, the Government proved that the defendant stole the Victim's identity, and used the Victim's identity to obtain tens of thousands of dollars in federal student aid and unemployment payments and to obtain immigration benefits.

### A.  Theft of Victim's Identity

The Government introduced the travel documents and fingerprint cards related to the defendant's entry – under his real name, Andre Marie Ngono – into the United States on December 7, 2006. (*See* GXs 100, 800G, 800H.) The Victim testified that he met the defendant in early 2007 at a church in the Bronx, that the defendant asked the Victim if the defendant could use the Victim's immigration papers in order to work, and that the Victim refused. (Tr. 52–53.) The Victim further testified that he maintained copies of his immigration paperwork in a file cabinet at the church. (Tr. 53–54.)

In April 2007, the defendant used the Victim's identity to work as a security guard. The Government introduced the fingerprint cards the defendant submitted in connection with his job application, (GXs 800D, 800E), and those fingerprints matched the fingerprints the defendant submitted when he entered the United States in December 2006. (Tr. 631.) Moreover, the president of the security guard company testified that he recognized the defendant as having worked as a security guard for the company. (Tr. 168.)

The Government also introduced records from the New York State Department of Motor Vehicles that showed the defendant had applied for state identification cards using the Victim's identity. (GXs 708–711.) Two of those applications – in 2009 and 2010 – were submitted when the Victim testified that he resided in Connecticut. (Tr. 57.) Moreover, the defendant's ex-wife testified that she lived with the defendant at the address listed on the 2009 DMV application. (*Compare* Tr. 448 *with* GX 708.) She further testified that she married the defendant under his real name, Andre Marie Ngono. (Tr. 452; GX 702.)

### B.  Unemployment Payments

The Government introduced evidence at trial that the defendant applied for and received unemployment insurance benefits using the Victim's identity. The defendant used the Victim's name, date of birth, and social security number to apply for unemployment benefits, to which he was not otherwise entitled. (GX 300.) The defendant listed his own address to receive the payments. (*Id.*) From February 2011 through February 2012, the defendant received $9,191 in unemployment benefits, $3,939 of which was federal funds. (GX 305; Tr. 262–63.) The evidence further showed that the defendant received the unemployment payments on a Chase

Hon. Deborah A. Batts  Page 3
August 10, 2017

debit card, which was mailed to his residence, (Tr. 453), and that the defendant used the card to pay the application fee at the City University of New York ("CUNY").  (Tr. 180; *compare* GX 206 with GX 401.)

### C.  Federal Student Aid

The Government introduced evidence proving that the defendant used the Victim's name, date of birth, social security number, and alien registration number in his application for admission to CUNY.  (GXs 200–205.)  The Government further proved that, in connection with his attendance at CUNY, the defendant – again using the Victim's identity – applied for and received $84,256 in Stafford Loans, Perkins Loans, and Pell Grants.  (Tr. 412–413; GX 214.)  A witness from CUNY testified that after the defendant's tuition and fees were paid, any remaining federal student aid was refunded to the defendant on a debit card, which he could then use for any other purchases.  (Tr. 501; GX 215.)

When he was arrested, the defendant possessed student identification cards bearing his photograph and the Victim's name for two of the CUNY campuses, further proving that the defendant attended CUNY under the Victim's identity.  (Tr. 355–56; GXs 15, 16.)

### D.  Immigration Fraud

Finally, the Government introduced evidence proving that the defendant used the Victim's name in connection with the defendant's application for immigration benefits under DACA.  An immigration officer from the U.S. Citizenship and Immigration Services testified that in order to qualify for relief under DACA, an applicant must satisfy several conditions, including that he or she be under the age of 31 by June 15, 2012 and that the applicant be under the age of 16 by the time he or she entered the United States.  (Tr. 539.)  The immigration officer further testified that relief under DACA allowed the applicant to receive authorization to work in the United States.  (Tr. 530.)  The Government proved that in connection with his DACA application, the defendant altered his own passport by (1) changing his name to the Victim's name; (2) altering his birthdate so that he would be under the age of 31; and (3) altering the passport number.  (*Compare* GX 106 *with* GX 108.)  The defendant's DACA application was approved, and as a result, he received an employment authorization card.  (GX 12.)  As part of the employment authorization process, the defendant submitted fingerprints, which matched the fingerprints he submitted in connection with his entry into the United States in December 2006.  (Tr. 631.)

When he was arrested, the defendant possessed an employment authorization card bearing his photograph, the Victim's name, and the alien number associated with the defendant's DACA application.  (GX 12.)

### Relevant Conduct

In addition to the $93,447 of federal student aid and unemployment benefits that the defendant obtained by using the Victim's identity, the defendant received the following benefits from New York State:  approximately $17,755.44 in Medicaid benefits, $6,267.69 in public

assistance payments, and $1,835 in Supplemental Nutrition Assistance Program payments between 2009 and 2015.  (Exhibit A.)  "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."  U.S.S.G. § 1B1.3 Background.  "[A] preponderance of the evidence is the appropriate standard to be used in considering uncharged relevant conduct for sentencing purposes."  *United States v. White*, 240 F.3d 127, 136 (2d Cir. 2001).

Exhibit A, attached hereto, is the final report of investigation from the Bureau of Fraud Investigation of the New York State Human Resources Administration.[1]  The report details that the defendant, using the Victim's identity, obtained over $25,000 in public assistance benefits from New York State.  For example, beginning in November 2009, the defendant began receiving Medicaid benefits, (Ex. A at 1); however, the Victim testified that he moved to Connecticut in 2007 and remained there until the end of 2011.  (Tr. 57.)  Therefore, because the Victim resided in Connecticut, he would not have received Medicaid from New York State.  Moreover, Exhibit A details that the benefits were paid to "███████," a variation of the Victim's name that the defendant used.  (*See* Tr. 94–95 (victim's testimony that he removed "███" from his name because the defendant was using "███" as his last name).)  Finally, Exhibit A shows that the last address on file for the recipient of the benefits was the same address that the defendant listed on his New York State identification card and employment authorization card. (*Compare* Ex. A *with* GXs 12 and 13.)

Accordingly, as reflected in the PSR, the $25,858.23 the defendant received in public assistance benefits from New York State should be considered relevant conduct and added to the total loss amount.

### Obstruction of Justice Enhancement

The Government agrees with the PSR's recommendation that a two-level enhancement should be added to the defendant's offense level due to the defendant's false statements made under oath.

During a December 16, 2016 conference before the Honorable P. Kevin Castel, the defendant stated, under oath, that his name was Andre Marie Ngono and that he was born on March 24, 1972.  (PSR ¶ 20.)  That name and date of birth match the name and date of birth on: (1) the defendant's visa application when he entered the United States in December 2006 (GX 111); (2) the defendant's marriage license when he married his ex-wife in 2010 (GX 702); and (3) the defendant's passport (GX 104).  During his direct testimony at trial, however, the defendant testified that his name was the Victim's name and that he was 30 years old.  (Tr. 650–51.)

Accordingly, pursuant to U.S.S.G. § 3C1.1 Application Note 4(f), a two-level enhancement should be added to the defendant's offense level because the defendant provided materially false information to a judge.  (PSR ¶ 23.)

---

[1] Because the report contains personal identifying information, it has been redacted for public filing.  An unredacted copy of the report will be furnished to Your Honor's chambers and the defendant with the courtesy copy of the Government's sentencing submission.

## **A Guidelines Sentence Is Appropriate**

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) supports the imposition of a Guidelines sentence of 24 to 30 months' imprisonment on Counts One through Five, in addition to the mandatory two-year consecutive term of imprisonment on Count Six.

*First*, a Guidelines sentence is necessary to reflect the nature, circumstances, and seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). For nearly a decade, the defendant assumed the Victim's identity and used that identity to steal over $100,000 in federal student financial aid and other public assistance benefits. Apart from the defendant's theft of government funds – which is not an insignificant amount – the defendant's conduct had a devastating impact on the Victim's life. The Victim testified that the defendant's actions left him in fear of not knowing what other actions the defendant took in the Victim's name. (Tr. 94.) The Victim testified that his credit was ruined due to the amount of student loans the defendant took out in the Victim's name. (*Id.*) The Victim further testified about the helplessness he felt because no one took his complaints of identity theft seriously. (Tr. 95.) Finally, the Victim testified that in order to repair the damage done to him by the defendant, the Victim had to legally change his name. (*Id.*) The defendant's actions caused real and sustained damage to the Victim, and a Guidelines sentence will provide just punishment for the defendant's conduct.

*Second*, a substantial sentence is necessary in light of the history and characteristics of this defendant, and to afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(1), (2)(B). While the defendant does not have a criminal history, the PSR identifies multiple infractions while the defendant has been incarcerated – including fighting with another person and issues with staff members. (PSR ¶ 10.) Moreover, to date, the defendant has refused to accept any responsibility for his actions. To the contrary, despite the overwhelming evidence at trial demonstrating that the defendant was in fact Andre Marie Ngono, the defendant brazenly insisted at trial that he had the Victim's name and added insult to the Victim's injury by claiming that the Victim was part of an international human trafficking organization. (Tr. 658.) A Guidelines sentence is appropriate due to the defendant's continued lies and complete lack of remorse for the harm he inflicted on the Victim. At a time when identity theft is on the rise, *see e.g.,* Andrea Peterson, *Why So Few Identity Theft Victims Turn to the Government for Help*, Wash. Post., Jan. 28, 2016 (reporting that the Federal Trade Commission "received over 490,000 identity theft complaints in 2015, a nearly 50 percent jump from the previous year"), such a sentence will also hopefully send a powerful deterrent signal to other aspiring identity thieves.

Hon. Deborah A. Batts                                                                                          Page 6
August 10, 2017

   The defendant engaged in serious criminal conduct, assuming the identity of the Victim, and using that identity for nearly a decade to steal tens of thousands of dollars from the United States.  Under such circumstances, a Guidelines term of imprisonment is appropriate, but not greater than necessary, to serve the ends of sentencing – including promoting respect for the law, providing just punishment for this particular defendant, and serving the needs of specific and general deterrence.

              Respectfully submitted,

              JOON H. KIM
              Acting United States Attorney

       By: <u>s/ Michael D. Longyear</u>
            Michael D. Longyear
            Timothy T. Howard
            Assistant United States Attorneys
            Tel:  (212) 637-2223 / 2308

cc: Andre Marie Ngono (by Hand Delivery)
   Register No. 77244-054
   Metropolitan Correctional Center
   150 Park Row
   New York, NY 10007

   Ezra Spilke, Esq. (by Email)